## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRAD WALKER and MARKEITHA WALKER,**<br><br>                    **Plaintiffs,**<br><br>**v.**<br><br>**CITY OF NEWARK, COUNTY OF ESSEX; DETECTIVE ZYNAH PICKETT, OFFICER CZEZRE ADAMS; DETECTIVE DWAYNE MAYS JR., OFFICER MAURICE MCKELVIN, individually and in their official capacities; JOHN DOES NO. 1 TO X, AND JOHN ROES NO. 1 TO X, individually and in their official capacities, jointly and severally,**<br><br>                    **Defendants.** | Civ. No. 19-16853 (KM) (ESK)<br><br>**AMENDED OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Now before the Court is the motion of Defendant the City of Newark (DE 9) to dismiss the Complaint (DE 1) filed by Plaintiffs Brad Walker and his spouse, Markeitha Walker. By letter dated June 18, 2020, Detective Zynah Pickett and Officer Maurice McKelvin join the motion to dismiss filed by Newark. (DE 37).[1] Plaintiffs have filed papers in opposition. (DE 24) For the reasons stated herein, I will grant in part and deny in part Defendants' motion to dismiss.

---

[1]     Officers Czezre Adams and Detective Dwayne Mays Jr. have not been served with the Complaint.

1

## I.  Summary[2]

For purposes of this motion to dismiss, I accept as true the allegations in the Complaint.

### A.  Facts

Plaintiff Brad Walker and his family own and operate the Allure Lounge, located at 417 Halsey Street in Newark, New Jersey. (Compl. ¶ 2) The Complaint alleges that on June 2, 2018, Mr. Walker was working at the lounge while an individual who he later learned was Detective Pickett of the Newark Police Department was hosting a gathering. (*Id.* ¶ 3) Other individuals, also later identified as Newark police officers, were in attendance, including Defendants Adams, Mays Jr., and McKelvin. (*Id.*) At some point, Mr. Walker was told that someone in that group had impermissibly brought liquor purchased elsewhere into the lounge. (*Id.* ¶ 4) Walker alleges that upon hearing this, he tried to enter the lounge (it is not clear where Walker was coming from). An unidentified individual assaulted him from behind by pushing him. (*Id.*) Another individual began screaming at him and threatened to harm him. (*Id.*) Walker did not engage with those individuals and instead kept walking into the lounge. (*Id.*) Unspecified defendants then got into a verbal altercation with another customer of the lounge. (*Id.* ¶ 5) Walker, although scared, tried to intervene, at which point he was pushed by another defendant and again physically threatened. (*Id.* ¶¶ 5–6)

Mr. Walker retreated to his second floor office. (*Id.* ¶ 6) From there he could see a crowd of customers gathering below him on the street. (*Id.* ¶ 7) Walker grabbed a legally registered gun and "placed it on his person." (*Id.* ¶ 8) He returned to the lounge and approached the individual later identified as Defendant Pickett to ask her what was going on. (*Id.* ¶ 9) Officer Pickett

---

[2]  Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

"Compl." = The Complaint filed by Plaintiffs. (DE 1-1)

allegedly responded by punching and kicking Walker. (*Id*.) Walker attempted to back away from Pickett, which caused three or four other defendants to "charge" him. (*Id*. ¶ 10) Walker then pulled out his gun and fired a single shot into the air. (*Id*. ¶ 11) Unspecified defendants responded by attempting to shoot Walker, but all of their shots missed. (*Id*. ¶¶ 12–13) Walker alleges that at no point prior to the start of the shooting did any individual announce that he or she was a Newark police officer. (*Id*. ¶ 12)

At this point, however, he heard someone yell "Newark Police" which caused him to lie down on the ground and put his weapon down. (*Id*. ¶ 13) While he was on the ground, Defendants handcuffed him and started kicking him. (*Id*. ¶ 14) Defendants then pulled Walker off the ground and one of them used a gun to hit Walker above his left eye. (*Id*.) Mr. Walker began bleeding as the kicking continued. (*Id*. ¶¶ 15–16) It was only when an employee informed defendants that Walker owned the lounge that they stopped beating him. (*Id*. ¶ 16) The defendants called the Newark police department and left the scene, leaving Walker handcuffed on the ground. (*Id*.¶ 18)

When different Newark officers arrived on scene, Mr. Walker was still on the ground, handcuffed and bleeding. (*Id*. ¶ 19) These officers placed him in a police vehicle, where he remained for 10 hours. (*Id*. ¶ 21) He witnessed other police officers collecting spent shells—an effort, he says, to cover up the shooting that had occurred earlier. (*Id*. ¶ 22) Ultimately, Mr. Walker was arrested and placed in jail. (*Id*. ¶ 23)

### B.   Procedural History

On or about June 28, 2018, Newark received a notice of claim from Mr. Walker. (DE 9-1 at 12). In August 2018, the City alerted Mr. Walker to certain deficiencies in his notice (*id*. at 12–13), and Mr. Walker responded on December 19, 2018. (*Id*.) Mr. Walker's notice of claim did not indicate that Mrs. Walker, now a plaintiff here, would be asserting a claim against the City. (*Id*.)

On July 17, 2019, Plaintiffs filed their Complaint in the Superior Court of New Jersey, Essex County, No. ESX-L-3624-18. Defendant Essex County was

served on August 6, 2019. (DE 1-1 at 2). On August 19, 2019, Essex filed a notice of removal, invoking this Court's original subject-matter jurisdiction under 28 U.S.C. § 1331 because the Complaint asserts causes of action under federal law. (*Id.* at 2–3)

The Complaint asserts a number of partially overlapping causes of action:

**Count 1**: New Jersey Civil Rights Act ("NJCRA") under N.J. Stat. Ann. § 10:6-2, *et seq.* (asserted against all Defendants);

**Count 2**: Negligent Infliction of Emotional Distress (asserted against Newark and the Individual Defendants[3]);

**Count 3**: Intentional Infliction of Emotional Distress (asserted against the Individual Defendants);

**Count 4**: Official Misconduct (asserted against all Defendants);

**Count 5**: Assault (asserted against the Individual Defendants);

**Count 6**: Negligent Supervision, Hiring and Retention (asserted against Newark and Essex County);

**Count 7**: Negligence (asserted against all Defendants);

**Count 8**: Conspiracy to Violate Constitutional Rights under the NJCRA and 42 U.S.C. §§ 1983, 1985 (asserted against the Individual Defendants);

**Count 9**: Punitive Damages under State Law (asserted against the Individual Defendants);

**Count 10**: Constitutional Violations under 42 U.S.C. §§ 1981, 1983, 1985, 1986 (asserted against the Individual Defendants[4]);

**Count 11**: Constitutional Violations under 42 U.S.C. §§ 1983, 1985, 1986, 1988 (asserted against Newark and Essex County);

**Count 12**: Punitive Damages under Federal Law (asserted against the Individual Defendants); and

**Count 13**: Per Quod (asserted against all Defendants).

---

[3]     I will refer to Defendants Detective Zynah Pickett, Officer Maurice McKelvin, Officer Czezre Adams, and Detective Dwayne Mays Jr. hereafter as the "Individual Defendants."

[4]     It appears that Plaintiffs intended Count 10 to be asserted only as to the Individual Defendants; it bears the following explanatory parenthesis: "(42 U.S.C. §§ 1983 et seq. - Police Officers)." (DE 1-1 at 26) Newark, later joined by Pickett and McKelvin, moved to dismiss both Counts 10 and 11.

On October 25, 2019, Newark filed a motion (DE 9) to dismiss certain counts of the Complaint. Then, on November 14, 2019, Essex cross-moved to dismiss (DE 21) the Complaint. On November 27, 2019, Plaintiffs filed a consent to the dismissal of Essex, which I so-ordered. (DE 25; DE 27)

In December 2019, Officers McKelvin and Pickett were served with the Complaint. (DE 26; DE 29) On June 18, 2020, Counsel for McKelvin and Pickett filed a letter requesting that they be permitted to join in Newark's pending motion to dismiss Counts 1, 2, 3, 4, 6, 7, 10, 11, and 13. (DE 37) Having received no objection from Plaintiffs, I will grant that request and consider Newark's arguments, *mutatis mutandis,* as if asserted on behalf of McKelvin and Pickett.

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[.]" *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In that regard, courts may consider matters of public record and exhibits attached to the complaint. *Schmidt*, 770 F.3d at 249 ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record"); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in complaint that are essential to plaintiff's claim).

Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment. "When a complaint relies on a document . . . the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

### III.    Analysis

####    A.    Punitive Damages

The prayers for relief in Counts 1 (NJCRA), 4 (Official Misconduct), and 10 (Constitutional Violations), include requests for punitive damages. Newark asserts that as a matter of law the City cannot be held liable for punitive damages under the Federal Civil Rights Act, the NJCRA, or the New Jersey Tort Claims Act. (DE 9 at 16–17) Plaintiffs concede the point and therefore do not oppose this portion of Newark's motion to dismiss. (DE 24 at 21) Accordingly, the court will strike the prayers for punitive damages under Counts 1, 4, and 10 to the extent asserted against Newark.

I consider more broadly the objection to punitive damages as it may affect the Individual Defendants. Counts 9 and 12 are standalone claims for punitive damages, asserted against the Individual Defendants only. "Punitive damages" is not a cause of action, but one of a number of forms of relief that might apply should some cause of action be proven:

> Punitive damages are a remedy incidental to cause of action, not a substantive cause of action in and of themselves. *See, e.g., Sellers v. School Bd. of City of Manassas*, 960 F.Supp. 1006, 1011–12 (E.D.Va.1997) (noting that compensatory and punitive damages not available under § 1983 if plaintiff does not state violation of substantive right), *aff'd*, 141 F.3d 524 (4th Cir. 1998); *California Natural, Inc. v. Nestle Holdings, Inc.*, 631 F.Supp. 465, 474 (D.N.J.1986) (noting that New Jersey law contains no independent cause of action for punitive damages); *see also* N.J. Stat. Ann. § 2A:15–5.13(c) (stating that punitive damages may be awarded under New Jersey law only if compensatory damages have been awarded)).

*Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000). Counts 9 and 12 are redundant, as Plaintiffs have included requests for punitive damages in the substantive counts. Counts 9 and 12 contribute nothing but clutter, and will be dismissed.

I next consider whether punitive damages are available against the Individual Defendants as a matter of law under the NJTCA and the civil rights statutes. I conclude that they are available.

7

The NJTCA, as noted above, provides that "[n]o punitive or exemplary damages shall be awarded against a public entity." N.J. Stat. Ann. § 59:9-2(c). Excluded from that limitation, however, are individual public employees, such as the officers here. *See Hayward v. Salem City Bd. of Educ.*, No. CV 14-5200 (JBS/AMD), 2016 WL 4744132, at *6 (D.N.J. Sept. 12, 2016). The requests for punitive damages against the officers under the NJTCA may therefore remain.

The Federal Civil Rights Act and the NJCRA also permit an award of punitive damages. Under Section 1983, a defendant whose conduct demonstrates a reckless or callous indifference toward others' rights may be liable for punitive damages. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (stating that a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"); *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989) (holding that a defendant's conduct must be at minimum reckless or callous to impose punitive damages under § 1983). The NJCRA (as discussed more fully below, *see* Section III.B.iv) is intended to parallel 42 U.S.C. § 1983 and incorporates existing § 1983 jurisprudence. *Perez v. Zagami*, 218 N.J. 202, 515 (2014). I see no precedent suggesting that I should depart from the usual rule of a parallel construction with respect to the availability of punitive damages. I hold that Plaintiffs may likewise pursue punitive damages against the Individual Defendants under the NJCRA.

Accordingly, the prayer for punitive damages remains operative, not as to the City, but as to the Individual Defendants and the substantive claims that remain in this case after the disposition of this motion.

### B. Claims Asserting Constitutional Violations

I turn to the counts of the Complaint that assert Constitutional violations. They are

**Count 1**:  NJCRA under N.J. Stat. Ann. § 10:6-2, *et seq.* (asserted against all Defendants);

**Count 4**:  Official Misconduct (asserted against all Defendants);

8

**Count 8**:   Conspiracy to Violate Constitutional Rights under the NJCRA and 42 U.S.C. §§ 1983, 1985 (asserted against the Individual Defendants);

**Count 10**: Constitutional Violations under 42 U.S.C. §§ 1981, 1983, 1985, 1986 (asserted against the Individual Defendants); and

**Count 11**: Constitutional Violations under 42 U.S.C. §§ 1983, 1985, 1986, 1988[5] (asserted against Newark and Essex County).

In their briefing, the parties have narrowed the disputes that remain under Counts 8, 10, and 11, eliminating claims under 42 U.S.C. §§ 1985 and 1986. (DE 24 at 56). Accordingly, the remaining constitutional claims are: Count 1 (NJCRA); Count 4 (Official Misconduct); and the § 1981 and 1983 claims under Counts 10 and 11. It is convenient to discuss them in reverse order.[6]

### i.    42 U.S.C. § 1981 (Count 10)

Count 10 asserts a claim under 42 U.S.C. § 1981.[7] To state a claim under § 1981, a plaintiff must allege: (1) that he was a member of a racial minority; (2) that Defendants intentionally discriminated against the plaintiff on the basis of race; and (3) "discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." *Varughese*, 2017 WL 4270523, at *6 (D.N.J. Sept. 26, 2017) (quoting *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)). As Plaintiff conceded in connection with Newark's motion to dismiss, the

---

[5]    42 U.S.C. § 1988 permits "the court, in its discretion, [to] allow the prevailing party ... a reasonable attorney's fee" for actions brought under 42 U.S.C. § 1983 and other statutes. Section 1988 does not give rise to a substantive cause of action, and comes into play only if the plaintiff prevails on a civil rights claim. I therefore do not discuss it further.

[6]    Count 8 cites 42 U.S.C. §§ 1983 and 1985. As noted, the Plaintiff agreed to drop the claims under § 1985. I assume that the agreement to drop the § 1985 conspiracy in Count 8 was intended to extinguish any substantive § 1983 claim as well. To the extent any such independent § 1983 claim was intended, it is entirely duplicative of other counts, so I dismiss Count 8 in its entirety.

[7]    Count 10 lists 42 U.S.C. §§ 1981, 1983, 1985, and 1986. As noted, the Plaintiff agreed to drop the claims under §§ 1985 and 1986. I therefore consider § 1981 and, in the following section, § 1983.

Complaint does not set forth any facts to suggest that Plaintiff was discriminated against based on his race or ethnicity. Moreover, the Complaint fails to assert any facts upon which to conclude that Plaintiff's right to make and enforce contracts was infringed.

The § 1981 claim in Count 10 is therefore dismissed.

### ii. 42 U.S.C. § 1983 (Counts 10 and 11)[8]

Counts 10 and 11 both allege Section 1983 claims that Defendants arrested Walker without probable cause and used excessive force, in violation of his Fourth and Fourteenth Amendment rights. Count 10 is asserted against the Individual Defendants, and Count 11 against the City of Newark.

When a federal right is infringed by an official acting under color of state law, the Civil Rights Act of 1871 provides a remedy:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 allows a party who has been deprived of rights, privileges, or immunities secured by the Constitution to seek damages and injunctive relief. *See id.* In *Monell v. Dep't Soc. Servs. of N.Y.C.*, "the Supreme Court established that municipalities and other government entities were 'persons' subject to liability under 42 U.S.C. § 1983." *Noble v. City of Camden*, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (citing *Monell*, 436 U.S. 658, 690-92 (1978)).

---

[8]     The Complaint and Plaintiff's briefing often conflate the distinction between claims brought under the NJTCA and constitutional claims brought pursuant to the NJCRA or Section 1983. (*See, e.g.*, "Point Four" DE 24 at 26–38) They are not the same thing, and they involve different standards. *See, e.g.*, *Owens v. Feigin*, 194 N.J. 607, 613–14 (N.J. 2008). Where an argument touches on the constitutional claims, however, I have considered it.

Section 1983 is not itself a source of substantive rights; it provides a remedy for violations of rights protected by other federal statutes or by the U.S. Constitution. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Therefore, in evaluating a § 1983 claim, a court must first "identify the exact contours of the underlying right said to have been violated" and determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.* (*citing Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

A prima facie case under § 1983 requires a plaintiff to demonstrate that: (1) a person deprived her of a federal right; and (2) the person who deprived her of that right acted under color of state law. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)).

Under element (2), "a state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of law"; nevertheless, "off-duty police officers who flash a badge or otherwise purport to exercise official authority generally act under color of law . . informal, behind the scenes exertion of state authority is as much within the scope of § 1983 as the more usual examples of formal and open action leading to the denial of federal rights." *Ecotone Farm LLC v. Ward*, 639 F. App'x 118, 126 (3d Cir. 2016) (internal citations and quotations omitted).

Mr. Walker alleges that the Individual Defendants announced that they were Newark Police in an effort to control the chaos at the lounge. The officers then restrained and handcuffed Mr. Walker. Those allegations are sufficient at this stage to establish that the officers, although then off-duty, were exercising state authority.

I therefore analyze whether under element (1), Mr. Walker was deprived of a federal right.

## 1. Individual Defendants' Liability under Count 10

### a. False Arrest

The Fourth Amendment prohibits "unreasonable searches and seizures."[9] U.S. CONST. amend. IV. The elements of the constitutional tort of false arrest are "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007); *accord Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S. Ct. 588, 593 (2004) *Brinegar v. United States*, 338 U.S. 160, 175–176, 69 S.Ct. 1302 (1949).

There was surely probable cause here to arrest Mr. Walker. The Complaint, assumed for these purposes to be true, alleges that the officers perceived that an unidentified individual had fired a weapon while in a crowd of people in or near a bar. The officers observed Mr. Walker fire the gun, announced that they were police officers, and jumped into action to detain him.[10] In these allegations I cannot perceive a basis for a claim that Mr. Walker was wrongfully detained without probable cause.

---

[9] The Fourth Amendment is applicable to the states through the Fourteenth Amendment. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979).

[10] Newark also attached to its motion to dismiss a copy of Newark's police report (DE 9-9) and the Summary Docket report for Plaintiff's criminal proceedings that stemmed from this incident. (DE 9-3) These publicly available documents reveal that the Complaint issued against Mr. Walker accused Mr. Walker of operating a handgun without a permit and while using hollow-point bullets. (DE 9-9 at 4) Mr. Walker ultimately pled guilty to unlawful possession of a weapon without a permit, but subsequently entered pretrial intervention proceedings. (DE 9-3 at 2; DE 9-4) The Court may take judicial notice of these documents without converting the motion to one for summary judgment *Gomez v. Town of W. New York*, No. 13–689, 2013 WL 5937415, at *7 n. 3 (D.N.J. Nov.4, 2013) ("The Court may take judicial notice of the criminal complaint as a matter of public record without converting this motion to dismiss into a motion for summary judgment.").

Accordingly, Defendants' motion to dismiss Count 10 insofar as it asserts a § 1983 claim for false arrest against the Individual Defendants is granted.

### b. Excessive Force

Mr. Walker's § 1983 claim that he was subjected to excessive force in the course of his arrest stands on firmer ground. Even a valid arrest may be carried out in an unlawful manner. Therefore, unlike a false arrest claim, an excessive force claim is not necessarily defeated by a showing of probable cause.

An excessive force claim is analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999) (citation omitted). "The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." *See Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (citations omitted). The relevant inquiry is "whether the officer's actions are 'objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted).

The Third Circuit has enumerated some relevant considerations:

In deciding whether challenged conduct constitutes excessive force, a court must determine the objective 'reasonableness' of the challenge conduct, considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Carswell*, 381 F.3d at 240 (quoting *Graham*, 490 U.S. at 396, 109 S.Ct. 1865). Other factors include "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). In evaluating reasonableness, the court must take into consideration the fact that "police officers are often faced to make split-second

13

> judgments—in circumstances that are tense, uncertain, and
> rapidly evolving—about the amount of force necessary in a
> particular situation." *Graham*, 490 U.S. at 397, 109 S.Ct. 1865.
> Thus, the court should not apply "the 20/20 vision of hindsight,"
> but should instead consider the "perspective of a reasonable officer
> on the scene." *Id.* at 396, 109 S.Ct. 1865.

*Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006).

In Count Ten, Mr. Walker alleges that the Officers applied excessive force when detaining him during the June 2018 incident. Mr. Walker alleges that upon hearing someone scream "Newark Police" he immediately lay on the ground and set aside his gun. (Compl. ¶ 13) While he was on the ground, officers began kicking him as they handcuffed him and then one of the officers pistol-whipped him in the face. (*Id.* ¶ 14) The officers allegedly continued to kick him as he lay bleeding on the ground. (*Id.* ¶¶ 16–17). The officers then called the Newark Police to respond and left the scene, leaving Mr. Walker bleeding and handcuffed. (*Id.* ¶ 18)

In summary, Mr. Walker's allegation is that even after he submitted to authority, put down his weapon, and was handcuffed, the officers applied excessive force. That is sufficient to support a claim that the Individual Defendants used force maliciously to inflict unnecessary pain on Mr. Walker. Count 10 therefore sets forth a § 1983 claim against the Individual Defendants for excessive use of force in connection with the arrest.

### c. Qualified Immunity

To complete the picture, I briefly consider whether the Individual Defendants would be entitled to qualified immunity in relation to the § 1983 excessive force claim. I conclude that they would not.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When properly applied,

qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Medley v. Briggs*, 475 U.S. 335, 341 (1986).

To overcome qualified immunity, a plaintiff must plead facts sufficient to show that: (1) the official violated a statutory or constitutional right; and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232; *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 168-69 (3d Cir. 2016). A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted). The burden of proving the affirmative defense of qualified immunity rests on the party seeking to invoke it. *See Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006).

At the motion to dismiss stage, I find that the allegations do not entitle the Individual Defendants to qualified immunity. As stated above, Plaintiff has overcome the minimal pleading hurdle of alleging that his constitutional rights have been violated at least insofar as the officers are alleged to have used excessive force. In 2018, when this incident occurred, the right to be free from excessive force was clearly established:

> The Court of Appeals for the Ninth Circuit has noted that at least as early as 1985 the use of excessive force by officers in effecting an arrest was clearly proscribed by the Fourth Amendment as it held, quoting a 1985 Supreme Court opinion, that "the Fourth Amendment governs not only whether a person or thing is subject to a 'seizure,' but also 'the manner in which a ... seizure is conducted.' " *Palmer v. Sanderson,* 9 F.3d 1433, 1436 (9th Cir.1993) (quoting *Tennessee v. Garner,* 471 U.S. 1, 7–8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985)). . . . Therefore, we hold that the right of an arrestee to be free from the use of excessive force in the course of his handcuffing clearly was established when Officer Tate acted in this case, and that a reasonable officer would have known that employing excessive force in the course of handcuffing would violate the Fourth Amendment.

*Kopec v. Tate*, 361 F.3d 772, 777–78 (3d Cir. 2004).[11]

Thus, insofar as Count 10 asserts a § 1983 claim of excessive force against the Individual Defendants, dismissal on qualified immunity grounds is denied.

### 2. Newark's Liability under Count 11

Count 11 asserts a § 1983 claim like that in Count 10, but asserts it against the City of Newark. Because the false arrest component has already been dismissed as against the Individual Defendants, I will dismiss it as to the City as well. The following discussion relates to the § 1983 excessive force claim.

The standard for municipal liability for actions of employees was delineated in *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Section 1983 liability cannot be predicated on *respondeat superior. See id.* at 694; *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parrat v. Taylor*, 451 U.S. 527, 537 n. 3 (1981)). Rather, it is only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury ... [that] the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. The two paths to *Monell* liability, then, are municipal "policy" or "custom."

In order to establish a prima facie case of *Monell* liability, the plaintiff must "(i) demonstrate the existence of an unlawful policy or custom; (ii) that resulted in a deprivation of the rights, privileges, or immunities secured by the Constitution or laws of the United States; and (iii) that the policy or custom was the proximate cause of the alleged deprivation." *Maldonado v. City of*

---

[11]     The omitted portion of the quotation from *Kopec* cited authority from the 1990s to the effect that the Third Circuit had adopted a "broad view" of what constitutes an established right. That view has arguably narrowed. *See, e.g., James v. New Jersey State Police*, 957 F.3d 165, 169 (3d Cir. 2020). Still, I find that the facts as alleged present a sufficiently clear case of excessive force under established case law.

*Passaic Bd. of Educ.*, No. CV1712245ESJAD, 2020 WL 289649, at *7 (D.N.J. Jan. 21, 2020) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A government policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck*, 89 F.3d at 971 (quoting *Bielevicz*, 915 F.2d 845, 850 (3d Cir. 1990)). In contrast, "a course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law." *Id.*

A *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline its officers. To plead such a claim, a plaintiff "must demonstrate that a city's failure to train its employees 'reflects a deliberate or conscious choice.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798, 800 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)):

> Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss. A plaintiff must also allege that the policy or custom was the "proximate cause" of his injuries. *See Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996). He may do so by demonstrating an "affirmative link" between the policy or custom and the particular constitutional violation he alleges. *Bielevicz*, 915 F.2d at 850 (internal quotation marks omitted). This is done for a custom if [Plaintiff] demonstrates that Newark had knowledge of "similar unlawful conduct in the past, ... failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury." *Id.* at 851. Despite these requirements, [Plaintiff] does not need to identify a responsible decisionmaker in his pleadings. *See id.* at 850. Nor is he required to prove that the custom had the City's formal approval. *See Anela v. City of Wildwood*, 790 F.2d 1063, 1067 (3d Cir. 1986).
>
> The pleading requirements are different for failure-to-train claims because a plaintiff need not allege an unconstitutional policy. *See Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation ... under § 1983."). Instead, he must demonstrate that a city's failure to train its employees "reflects a deliberate or

17

> conscious choice." *Brown*, 269 F.3d at 215 (internal quotation
> marks omitted). For claims involving police officers, the Supreme
> Court has held that the failure to train "serve[s] as [a] basis for §
> 1983 liability only where [it] … amounts to deliberate indifference
> to the rights of persons with whom the police come into contact."
> *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103
> L.Ed.2d 412 (1989) (footnote omitted). A plaintiff sufficiently pleads
> deliberate indifference by showing that "(1) municipal policymakers
> know that employees will confront a particular situation[,] (2) the
> situation involves a difficult choice or a history of employees
> mishandling[,] and (3) the wrong choice by an employee will
> frequently cause deprivation of constitutional rights." *Doe v.
> Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal
> quotation marks omitted) (quoting *Carter v. City of Philadelphia*,
> 181 F.3d 339, 357 (3d Cir. 1999) ).

*Roman*, 914 F.3d at 798.

Here, Walker has not pled any official municipal policy, in the sense of a
proclamation, policy, or edict that resulted in his injuries. Instead, Walker
alleges customs and practices that amount to a failure to train and supervise
Newark's police to prevent the use of excessive force.

In that regard, Walker points to the findings "of the Special Litigation
Section of the Civil Rights Division and the United States Attorney's Office for
the District of New Jersey presented in their Investigation of the Newark Police
Department on July 22, 2014" (Compl. at 13) and the findings in "the United
States v. City of Newark, et al., Civil Action No. 16-1731 (MCA) (MAH) Consent
Decree Independent Monitor - Fifth Quarterly report" dated June 28, 2018. (*Id.*)
Newark has attached the June 2018 Fifth Quarterly Report (the "2018 Report"),
which discussed the 2014 DOJ report.[12] (*See* DE 9-5) The 2018 Report stated
as follows:

> In 2014, the United States Department of Justice ("DOJ") issued a
> report concluding that NPD officers engaged in a pattern or

---

[12]   Again, I will consider this document not for its truth but as support for the
allegations as pled. On a Rule 12(b)(6) motion, "document[s] integral to or explicitly
relied upon in the complaint may be considered without converting the motion [to
dismiss] into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114
F.3d 1410, 1426 (3d Cir. 1997) (citations omitted). Here, Plaintiff has expressly relied
upon the conclusions found in the 2018 Report in the Complaint. (*See* Compl. at 13)

18

practice of unconstitutional policing, including: theft by officers, unlawful stops and arrests, excessive use of force and retaliation against individuals who exercise their First Amendment rights. Because of these findings, on March 30, 2016, DOJ, NPD and the City of Newark (the "City") entered into a written settlement agreement – a Consent Decree – that sets forth specific tasks designed to correct NPD's past unconstitutional practices, and transform NPD into a twenty-first century police force. The Consent Decree requires NPD to implement significant reforms, including new policies and procedures, additional trainings, and increased accountability through accurate record keeping and transparency.

(DE 9-5 at 5) With respect to "use of force" the 2018 Report noted that Newark had achieved "preliminary compliance" with revising its current use of force policy in conformity with the consent decree. The revised use of force policies were still being developed, however, and were subject to further approval. (*Id.*at 11–12, 14–15) The 2018 Report further stated:

1. Use of Force

Under Section VIII of the Consent Decree, NPD must, among other things, develop and implement training "directing that the use of force by NPD officers accords with the rights secured and protected by the Constitution and state and federal law." Paragraph 11 of the Consent Decree requires NPD to provide the Monitor and DOJ with drafts of proposed training plans or training curricula.

As noted in prior Quarterly Reports, NPD is seeking external funds to retain an expert to develop its use of force training plans and curriculum. Although well-intentioned, due to factors outside of NPD's control, this process turned into nearly a two-year delay to the development of this training, as reported previously.

The Monitoring Team will comment on NPD's progress in developing this training curriculum in its next (Sixth) Quarterly Report.

(*Id.* at 22)

From this passage, it is reasonable to infer that there was an unsatisfactory history of issues concerning use of force by the Newark Police. That history ultimately led to the 2016 consent decree. Newark was in the process of addressing its inadequate practices and customs in 2018, and is to

be applauded for that. But Plaintiff has pointed to at least minimal evidence that, at the time of the incident, it was too early to declare "Mission Accomplished."

We are at the stage of pleading, not proof. Mr. Walker has adequately alleged that "[the City's] continued official tolerance of repeated misconduct facilitate[d] similar unlawful actions in the future," including the use of excessive force. *Roman*, 914 F.3d at 799. It follows that Walker has adequately pled a municipal custom and proximate causation under § 1983. Whether Newark had sufficiently addressed its officers' use of excessive force and put its problems behind it is an issue that requires development in discovery.

In sum, Newark's motion to dismiss Count 11 is granted as to the § 1983 false arrest claim, but denied as to the § 1983 excessive force claim.

### iii.      Count 4: Official Misconduct

Under Count 4, Plaintiff asserts a state law claim of official misconduct under N.J. Stat. Ann. § 2C:30-2 of the New Jersey Criminal Code.[13]

Defendants assert primarily that Mr. Walker cannot hold them civilly liable under a criminal statute. Plaintiffs concede that "N.J.S. 2C:30-2(a)

---

[13]   N.J. Stat. Ann. § 2C:30-2 of the New Jersey Criminal Code states:

A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:

> a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or
>
> b. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.

Official misconduct is a crime of the second degree. If the benefit obtained or sought to be obtained, or of which another is deprived or sought to be deprived, is of a value of $200.00 or less, the offense of official misconduct is a crime of the third degree.

affords no private right of action.'" (DE 24 at 22)[14] Accordingly, to the extent Count 4 asserts a claim for official misconduct under N.J. Stat. Ann. § 2C:30-4—and it is titled as such—this claim is dismissed as to all Defendants.

Plaintiffs assert in their brief that Count 4 also contains state and federal civil rights claims. Like many of the counts, it contains a redundant laundry list which, if taken literally, would tend to imply that every count asserts every theory against every Defendant. The division of counts, however, must mean something, and I will not read the Complaint that way. To the extent Plaintiff actually intends to assert that his constitutional rights were violated under Count 4, it would duplicate Counts 10 and 11, and would be subject to the same analysis. Accordingly, I would dismiss what remains of Count 4 as duplicative.

### iv.    Count 1: NJCRA

Count 1 alleges under the NJCRA the same violations that are alleged under § 1983 in Counts 10 and 11. The NJCRA, N.J. Stat. Ann. § 10:6-2(c), provides that "[a]ny person who has been deprived of any substantive rights, privileges or immunities secured by the Constitution or laws of this State by a person acting under color of law, may bring a civil action for damages."

The New Jersey State Legislature, when it enacted the NJCRA, intended it to parallel 42 U.S.C. § 1983, and sought to incorporate existing § 1983 jurisprudence. *Perez*, 218 N.J. at 515; *see also RaCapt. Mos v. Flowers*, 429 N.J. Super. 13, 23 (App. Div. 2012) (stating that NJCRA was "modeled on the federal civil rights law which provides for a civil action for deprivation of civil

---

[14]    In general, New Jersey courts "will not allow private plaintiffs to sue for injunctions to enforce the state penal laws. . . Violations of these laws 'are left to the agencies charged with the enforcement of the criminal laws.'" *Matter of State Comm'n of Investigation*, 108 N.J. 35, 41 (1987) (citing *Trisolini v. Meltsner*, 23 N.J. Super. 204, 208–09 (N.J. Super. Ct. App. Div. 1952)); *see also Jones v. Somerset Cty. Prosecutor's Office*, No. CV 15-2629 (FLW), 2017 WL 1337432, at *9 (D.N.J. Apr. 7, 2017) ("Plaintiff has not pleaded that he has a private right of action under [N.J. Stat. Ann. § 2C:30-2], and the Court has not found authority for that proposition. Indeed, it appears that Plaintiff has no private right of action to enforce alleged violations of the criminal code." (citations omitted)).

rights." (citations omitted)) *Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). Thus, the NJCRA is construed nearly identically to Section 1983.

The parties have not suggested any distinction between the Count 1 claims under NJCRA and their Count 10 and 11 counterparts under 42 U.S.C. § 1983. Therefore, for the reasons outlined in Section III.B.ii, *supra*, Defendant's motion to dismiss Count 1 is granted as to Plaintiff's false arrest claim, but denied as to the claim of excessive force.

### C.      State Tort Claims

I turn next to Plaintiffs' state-law tort claims, asserted pursuant to the NJTCA. As relevant to the motion to dismiss, five claims are at issue:

**Count 2**:  Negligent Infliction of Emotional Distress ("NIED");

**Count 3**:  Intentional Infliction of Emotional Distress ("IIED");

**Count 6**:  Negligent Supervision, Hiring and Retention;

**Count 7**:  Negligence; and

**Count 13**: *Per quod* claim of Mrs. Walker.

#### i.      Standard for Liability and Immunity under the NJTCA

The New Jersey Tort Claims Act ("NJTCA"), N.J. Stat. Ann. § 59–1–1, *et seq.*, sets the conditions under which public entities and public employees can be held liable in tort.

The NJTCA permits *respondeat superior* liability, but limits it. Under the NJTCA, a public entity is immune from liability except where the injury is "proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J. Stat. Ann. § 59:2-2. A public entity is not liable, however, for "acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." *Id.* § 59:2–10. Moreover, "A public entity is not liable for any injury caused by adopting or failing to adopt a law or by failing to enforce any law." *Id.* § 59:2-4.

As for public employees, "[e]xcept as otherwise provided by this act, a public employee is liable for injury caused by his act or omission to the same extent as a private person." N.J. Stat. Ann. § 59:3-1(a). However, a public employee is absolutely immune from "an injury where a public entity is immune from liability for that injury," *Id.* § 59:3-1(c), and "[a] public employee is not liable for an injury caused by his adoption of or failure to adopt any law or by his failure to enforce any law." *Id.* § 59:3-5. The NJTCA grants qualified immunity to a public employee "if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." *Id.* § 59:3-3.

Neither form of immunity under the NJTCA extends to public employees if their conduct "was outside the scope of [their] employment or constituted a crime, actual fraud, actual malice, or willful misconduct." *Id.* § 59:3–14(a).

### ii.    Count 2: NIED

Plaintiff does not dispute that Count 2, a claim of NIED, must fail as to Newark. (*See* DE 24 at 29 ("Plaintiff has produced evidence in conjunction with the NTC filed with Newark that he has suffered physical injury and that psychological injury subsequently also arose from the incident which is adequate to allow him to recover under either recognized IED theory from the defendant police, *but not Newark*." (emphasis added)) That concession leaves Count 2 intact as to the Individual Defendants, so I consider the motion to dismiss as to them.

Under New Jersey Law, a claim for NIED is "understood as negligent conduct that is the proximate cause of emotional distress in a person to whom the actor owes a legal duty to exercise reasonable care." *Decker v. Princeton Packet, Inc.*, 116 N.J. 418, 561 A.2d 1122, 1128 (N.J. 1989). To succeed, Plaintiff must prove the following: (1) "a duty of reasonable care" was owed by the defendant to the plaintiff, (2) that duty was breached, (3) the "plaintiff suffered severe emotional distress," and (4) the breach proximately caused Plaintiff's injury. *Russo v. Nagel*, 358 N.J. Super. 254, 817 A.2d 426, 435 (N.J.

Super. Ct. App. Div. 2003). "[T]he emotional distress suffered by plaintiff must be so severe that no reasonable [person] could be expected to endure it." *Ingraham v. Ortho-McNeil Pharm.*, 422 N.J. Super. 12, 20 (N.J. Super Ct. App. Div. 2011).

The NJTCA adds an additional requirement under Section 59:9-2(d), which contains a "verbal threshold requirement" in relation to damages for pain and suffering. The section provides as follows:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

N.J.S.A. § 59:2-2(b); *see also DelaCruz v. Borough of Hillsdale*, 183 N.J. 149, 162 (N.J. 2005) (referring to this subsection as the "verbal threshold requirement").

The Complaint asserts that on the evening of June 2, 2018, Mr. Walker was in pain and fear. (Compl. ¶ 24) As a result, he asserts in general terms, he has become "permanently depressed," has trouble sleeping, has nightmares, has a fear of the police, has permanent physical scars, and has suffered a deterioration in his relationship with his wife. (*Id.* ¶¶ 25–27) These allegations of emotional distress would all fall under the category of "pain and suffering," which does not meet the verbal threshold. *See Gretzula v. Camden Cty. Tech. Sch. Bd. Of Educ.*, 965 F. Supp. 2d 478, 490 (D.N.J. 2013) (stating a school board employee's IIED claim of mental anguish and emotional distress was barred); *PBA Local No. 38 v. Woodbridge Police Dept.*, 832 F. Supp. 808, 821 (D.N.J. 1993) (finding injuries consisting of humiliation, mental pain and anguish "fall within the purview of pain and suffering"); *Mercado v. State*, 515 A.2d 804, 808 (N.J. Super. Ct. Law. Div. 1985) ("[E]motional stress, distress, anxiety, and embarrassment ... provide no basis for recovery ... under the Tort Claims Act."); *but see Collins v. Union County Jail*, 150 N.J. 407, 413 (N.J 1997)) (holding plaintiff's claim of permanent psychological injury in form of

posttraumatic stress disorder resulting from being raped by corrections officer may constitute a "permanent loss of a bodily function" even absent residual physical injury).

The only lasting physical injury alleged in the Complaint appears to be a scar. However, there are no allegations concerning the extent to which this scar continues to cause physical pain to Mr. Walker. Mr. Walker further alleges that he is permanently depressed, but there are no factual or medical allegations in support of that conclusory self-diagnosis. Accordingly, I find that Mr. Walker has failed to assert facts supporting a NIED claim.

The motion to dismiss Count 2 is therefore granted.

### iii.     Count 3: IIED

Count 3, a claim for IIED, is pled only against the Individual Defendants. (Compl. at 16)

In his opposition brief, Plaintiff states that he wished to name Newark as well. (*See* DE 24 at 26) "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Penn. v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). In any event, such an amendment would be futile. A public entity is not liable under the NJTCA for "acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." *Id.* § 59:2–10. Plaintiff concedes that he cannot maintain a cause of action for IIED, an intentional tort, against Newark. (*See* DE 24 at 29) *See also Soto v. City of Newark*, 72 F. Supp. 2d 489, 497 (D.N.J. 1999) ("[T]he Court cannot find Defendants – public entities – liable for [IIED].") (citing N.J. Stat. Ann § 59:2-10); *McDonough v. Jorda*, 214 N.J.Super. 338, 350 (N.J. Super. Ct. App. Div. 1986) (interpreting 59:2–10 to provide that vicarious liability does not apply when a municipal employee commits an intentional tort); *Pacifico v. Froggatt*, 249 N.J. Super. 153, 155 (Law Div.1991) (holding that 59:2–10 said public entity was not liable for the willful acts of its employee).[15]

---

[15]     Count 5 (assault), asserted only against the Individual Defendants, would therefore not be properly asserted against Newark. *See Sims v. Tropicana Entm't, Inc.*,

The Section 59:2-10 bar does not apply to the Individual Defendants. This claim nevertheless fails as to them. As noted above, the allegations fail to surpass the verbal threshold, just as they did for NIED.

Accordingly, the motion to dismiss Count 3 is granted.

### iv.    Count 6: Negligent Supervision, Hiring, and Retention

Defendants move to dismiss Plaintiff's negligent hiring and supervision claims, asserting that because these "allegations go directly to the failure to enforce the law, the City is immune to any such claims under N.J.S.A. §§ 59:2-4, 59:3-5." (DE 9-1 at 24–25) I need not explore the contours of such immunity, because I find that Count 6 fails to state a claim.

As explained by the New Jersey Supreme Court in *DiCosala v. Kay*, "the tort of negligent hiring addresses the risk created by exposing members of the public to a potentially dangerous individual, while the doctrine of *respondeat superior* is based on the theory that the employee is the agent or is acting for the employer." 91 N.J. 159, 172-73 (1982); *V.A. ex rel., M.A. v. New Jersey Nat. Guard Youth Challenge Program*, No. CIV A 06-347 JBS, 2007 WL 2010940, at *4 (D.N.J. July 9, 2007) (explaining same). Thus, "a claim based on negligent hiring or negligent supervision is separate from a claim based on *respondeat superior*." *Hoag v. Brown*, 397 N.J. Super. 34, 54 (App. Div. 2007). The NJTCA permits claims of negligent hiring or negligent supervision for acts committed outside the scope of employment, which would not be actionable under *respondeat superior. Id.* (collecting cases); *see also Adams v. City of Camden*, 461 F.Supp.2d 263, 269–70 (D.N.J. 2006).

Under New Jersey Law,

> the tort of negligent hiring has as its constituent elements two fundamental requirements. The first involves the knowledge of the employer and foreseeability of harm to third persons. An employer will only be held responsible for the torts of its employees beyond

---

No. 13-1981, 2016 WL 4801431, at *3 (D.N.J. Sept. 9, 2016) ("Assault and battery are torts that require a showing of intentional or willful misconduct. Therefore, the [municipality] is immune from liability for the assault and battery claims." (citation omitted)).

> the scope of the employment where it knew or had reason to know
> of the particular unfitness, incompetence or dangerous attributes
> of the employee and could reasonably have foreseen that such
> qualities created a risk of harm to other persons.

*DiCosala v. Kay*, 91 N.J. 159, 173 (1982).

"Like the tort of negligent hiring, negligent supervision is separate from the theory of *respondeat superior* because it covers acts committed outside of the scope of employment. Employers have a duty to supervise employees, and liability may be imposed if an employer fails to perform that duty.'" *Sullivan v. Marina Dist. Dev. Co.*, LLC, No. CIV. 10-4204 RBK/JS, 2012 WL 993417, at *3 (D.N.J. Mar. 23, 2012) (citing *Dixon v. CEC Entm't, Inc.*, 2008 WL 2986422, at *16 (N.J. Super. Ct. App. Div. Aug.6, 2008) (per curiam)). Thus,

> liability may be imposed on an employer who fails to perform its duty to
> train and supervise its employees. *Tobia v. Cooper Hosp. Univ. Med. Ctr.*,
> 136 N.J. 335, 346, 643 A.2d 1 (1994). Because this is a negligence claim,
> in order to establish a prima facie claim for negligent training, plaintiff
> must show that (1) the defendant owed a duty of care to the plaintiff, (2)
> defendant breached that duty of care, (3) defendant's breach was the
> proximate cause of plaintiff's injury, and (4) defendant's breach caused
> actual damages to plaintiff. *Weinberg v. Dinger*, 106 N.J. 469, 484, 524
> A.2d 366 (1987).

*Vasquez v. Gloucester Cty.*, No. CIV.A. 13-4146 JEI, 2015 WL 3904550, at *5 (D.N.J. June 25, 2015).

Here, the Complaint does not contain any facts to suggest that Newark had reason to know that any of the specific Individual Defendants were particularly unfit, incompetent, or dangerous, or that Newark could have foreseen that these officers possessed qualities that created a risk of harm to Plaintiff. Furthermore, the Complaint does not provide sufficient facts to suggest that Newark breached its duty of care to Plaintiff by providing inadequate supervision of or hiring these officers, or that the deficient supervision or decision to hire these officers was a proximate cause of Plaintiff's injuries. Rather, the Complaint alleges in a conclusory manner that Newark was responsible for the hiring and supervising of these Officers, and

failed to adequately do so thus causing harm to Walker. (*See* Compl. at 20) Likewise, the Complaint states in a conclusory manner that Newark knew based on these Officer's "personnel files and improper actions" that it had reason to know that these officers would pose an unreasonable risk to Plaintiff. (*Id.* at 21) Nothing about the officers' personnel files or prior actions is alleged; Plaintiff is hypothesizing, not reporting facts. These allegations are insufficient to assert a claim for negligent supervision, hiring, and retention.

Accordingly, I will grant Newark's motion to dismiss Count 6.

### v.    Count 7: Negligence by Police Officers

Count 7 asserts a claim for negligence: "Defendants, or any of them, owed Plaintiff a duty to safely and legally detain Plaintiff and use no more than reasonable force in arresting and detaining Plaintiff." (Compl. at 22) Here, says the Complaint, officers failed to intervene when other officers used excessive force in the course of detaining Mr. Walker. (*Id.*)

Newark asserts that Count 7 is really a claim that the officers failed to intervene. If the claim is viewed in that way, says Newark, it is immune from liability because the Individual Defendants are immune. The Individual Defendants are immune because "[a] public employee is not liable for an injury caused by his adoption of or failure to adopt any law or by his failure to enforce any law." N.J. Stat. Ann. § 59:3-5. Again, I need not reach the immunity issue because Count 7 fails to state a claim.

Count 7 seeks to hold Newark and the Individual Defendants liable under a negligence theory. The alleged underlying conduct, however, is intentional; the officers allegedly assaulted Mr. Walker or acquiesced while other officers did so. And indeed, the Complaint contains an assault claim (Count 5), which no one has moved to dismiss. No facts are pled suggesting failure to exercise due care; should any such facts emerge in discovery, I will entertain a motion to amend.

For now, I will further streamline this ungainly Complaint by granting Defendants' motion to dismiss Count 7.

### vi.    Count 13: Per Quod Claim

Count 13 a per quod claim that Mrs. Walker was deprived of, and will continue to suffer, the loss of emotional and physical support of her husband as a result of his injuries. (Compl. at 30)[16] Newark moves to dismiss this claim, asserting that Mr. Walker's pre-suit notice of claim did not refer to his wife or any potential claims she might assert. (DE 9-1 at 20–21) Accordingly, says Newark, this claim is barred for failure to comply with the NJTCA's notice requirements. (*Id*).

The NJTCA imposes certain prerequisites to the filing of a lawsuit. "[N]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J. Stat. Ann. § 59:8-3. Such a pre-suit notice of claim is not required to list causes of action, but must contain certain facts about the claimant and the nature of the injury;

---

[16]    Plaintiffs argue in their briefing that Count 13 asserts a "14th Amendment" derivative claim under Section 1983 because she has been "burdened by Mr. Walker's inability to function at the physical and psychological level existing prior to the illegal arrest and assault, and she therefore retains a Constitutional right to seek redress and damages for the amount of diminution of such happiness." (DE 24 at 24–25) I find nothing in Count 13 that asserts a derivative constitutional claim nor do I find that Plaintiffs could amend Mrs. Walker's *per quod* claims so as to assert derivative constitutional claim through their motion to dismiss briefing. *See* Section III.C.iii, *supra*. In any event, such effort to amend this claim would be futile. As this Court held when surveying cases faced with this very question:

> [T]he majority of federal courts to consider the question of whether or not section 1983 supports a claim for loss of consortium have decided that it does not. *Shaw v. Stroud*, 13 F.3d 791, 805 (4th Cir.1994); *Niehus v. Liberio*, 973 F.2d 526, 534 (7th Cir.1992); *Stallworth v. City of Cleveland*, 893 F.2d 830, 838 (6th Cir.1990). In *Niehus*, the Seventh Circuit based its holding on the notion that the Constitution protects only a limited set of important rights; it does not afford protection to the kind of lesser benefits encompassed by the concept of "consortium." 973 F .2d at 534. In *Stallworth*, the Sixth Circuit took a subtly different approach, reasoning that the wording of section 1983 afforded relief only to persons whose rights were actually invaded—not to persons who suffered harm from the deprivation of another person's rights. 893 F.2d at 838.

*Armstrong v. Sherman*, No. CIV.09-716, 2010 WL 2483911, at *5 (D.N.J. June 4, 2010).

it must be filed with the department or agency involved in the alleged wrongful act; and it must be signed by the claimant. *Id.* §§ 59:8–4, 8–6, 8–7.

Section 59:8-8 imposes a 90-day time limit on filing a notice if the claim is one for personal injury. A "judge of the Superior Court" is granted the discretion to permit a claimant who fails to comply with the 90-day deadline to "file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby." *Id.* § 59:8-9; *see also Ganame v. Univ. Hosp.*, No. A-2087-17T2, 2019 WL 1828308, at *3 (N.J. Super. Ct. App. Div. Apr. 25, 2019) ("But N.J.S.A. 59:8-9 states that at the discretion of a Superior Court judge, a late notice of claim may be filed . . . ."). Such an application must be "supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within" 90 days. *Id.*

The Defendants do not deny that Mr. Walker timely filed a notice of tort claim. That notice of claim, however, did not refer to Mrs. Walker or otherwise inform Defendants that she might assert a claim. Here, Newark primarily relies on *Madej v. Doe*, 194 N.J. Super. 580, 584 (Ch. Div. 1984) and *Alberts v. Gaeckler*, 446 N.J. Super. 551, 563 (Law. Div. 2014). The City cites *Madej* for the proposition that a "'per quod claim is independent from and not derivative of [a spouse's] personal injury claim'" (DE 9-1 at 20) and *Alberts* for the proposition that spouses asserting loss of consortium claims must file a notice of claim. (*Id.*)

I am not persuaded that these cases are relevant to the issue here, which concerns the scope of the notice of claim. New Jersey appellate courts have repeatedly held that *per quod* claims are derivative claims, and hence closely related to the underlying claim of the spouse. *See Kibble v. Weeks Dredging & Const. Co.*, 161 N.J. 178, 190 (N.J. 1999) (stating that "a per quod claim is derivative of the injured spouse's personal injury cause of action" but independent for purposes of assessing damages); *see also Velarde v. Andre*, No.

A-3344-14T2, 2016 WL 4216617, at *1 (N.J. Super. Ct. App. Div. Aug. 11, 2016) ("[W]e will refer to 'plaintiff' in the singular because his *per quod* claims are derived from his relationship as Ana Velarde's husband."); *Milacci v. Mato Realty Co.*, 217 N.J. Super. 297, 306 (N.J. Super. Ct. App. Div. 1987) (disapproving of the holding in *Madej*).

In *Milacci,* a wife filed a notice of claim that said nothing about the *per quod* claim later asserted by her husband. 217 N.J. Super. at 299. The Appellate Division held that it was not necessary for the husband to file a separate notice of claim, which would be redundant: "[A]ny investigation made by the State to determine the merits of the wife's claim necessarily would cover the same ground as the *per quod* claim of the husband." *Id.* at 306. *Milacci* reasoned that "[i]f the notice filed by the wife had included the words 'and on behalf of my husband' there could be no doubt that his claim would be fully protected. We do not believe he should be deprived of his day in court because of so minor an omission. In light of N.J.S.A. 59:8–6 we perceive of no evil or harm which will befall governmental agencies because of our holding. We disapprove the holding of the Law Division in *Madej.*" *Id. Milacci* therefore reversed the dismissal of the husband's claim and found that the notice of tort claim was adequate and timely.

I follow *Milacci* here, and find that Ms. Walker's derivative loss of consortium claim should not be dismissed simply because Mr. Walker's timely notice of tort claim did not mention Ms. Walker's potential *per quod* claim. The defendants are not prejudiced. They were placed on notice of litigation arising from this barroom incident, and the investigation into Mr. Walker's claims would sufficiently, if not completely, cover the facts essential to Mrs. Walker's derivative claim.

Accordingly, Defendants' motion to dismiss Count 13 based on failure to file a notice of tort claim is denied.

### IV.   Conclusion

For the reasons set forth above, I will grant in part and deny in part the motion to dismiss (DE 9) of Newark and the Individual Defendants (DE 37).

The following claims are dismissed with prejudice, because amendment would necessarily be futile:

> **Count 3** (IIED) asserted against Newark
>
> **Counts 9** and **12** (Punitive Damages) asserted as standalone claims against the Individual Defendants
>
> All **punitive damages** claims against Newark

Because this is an initial dismissal, the following claims are dismissed without prejudice:

> **Count 2** (NIED) asserted against all Defendants
>
> **Count 3** (IIED) asserted against the Individual Defendants,
>
> **Count 4** (Official Misconduct) asserted against all Defendants;
>
> **Count 6** (Negligent Supervision/Hiring) asserted against Newark
>
> **Count 7** (Negligence) asserted against all Defendants
>
> **Count 8** (Conspiracy to Violate Constitutional Rights) asserted against the Individual Defendants
>
> **Counts 1** (NJCRA), **10** (Section 1983), and **11** (Section 1983), as against all Defendants insofar as they assert claims for false arrest
>
> **Counts 10** and **11** insofar as they assert claims under Sections 1981, 1985, 1986, and 1988

The claims that now remain are as follows:

> **Count 1** (NJCRA) as against all Defendants for use of excessive force
>
> **Count 5** (Assault) as against the Individual Defendants
>
> **Count 10** (Section 1983) asserted against the Individual Defendants for use of excessive force
>
> **Count 11** (Section 1983) as against Newark for use of excessive force

**Count 13** (*Per quod*) as against all Defendants

The court's previously-filed order (DE 38) remains in effect.

Dated:  July 1, 2020

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**